23782

NORELL FOREST PRODUCTS, d/b/a Norell East, a division of Appleby Lumber Company, Inc., Respondent v. H & S LUMBER COMPANY, Petitioner.

(426 S.E. (2d) 800)

Supreme Court

*Charles T. Smith,* Georgetown, *for petitioner.*

*W.E. Calloway,* of *Robinson, Mendoza, Barton & Mc-Carthy, P.A.,* Columbia, *for respondent.*

Heard Dec. 8, 1992.

Decided Feb. 1, 1993.

CHANDLER, Justice:

We granted certiorari to review the Court of Appeals' opinion reported at — S.C. —, 417 S.E. (2d) 96 (Ct. App. 1992).

We affirm in part; reverse in part.

## FACTS

Respondent, Norell Forest Products (Norell/Wholesaler), is a wholesale distributor of specialty doors and windows; Petitioner, H & S Lumber Company (H & S/Retailer), is a retail distributor of Wholesaler's products. Bruce Watts (Watts/ Contractor) is a contractor who, in December, 1988, was constructing a very large home on Pawleys Island. Watts negotiated with representatives of both Wholesaler and Retailer, emphasizing the importance that building materials be delivered in mid-December. After Wholesaler's representative gave assurances of timely delivery, Watts, through Retailer, placed a large order for the specialty doors and windows.

Wholesaler (1) was late with delivery and (2) supplied numerous nonconforming and/or defective items to Retailer. As a result, Watts' construction of the home was delayed; additionally, Watts incurred expenses in remedying defects and rescheduling subcontractors.

In early March, 1989, Watts advised Retailer that, commencing March 13, a $100-per-day penalty would be assessed for late delivery; Retailer immediately advised Wholesaler of Watts' intent to impose the penalty.

In June, 1989, Retailer agreed that Watts' account should be credited in the amount of $8,594.39, of which $4,400 represented late penalties, and the remainder was for nonconforming or defective items shipped by Wholesaler.

Thereafter, Wholesaler instituted this suit to recover the balance due it from Retailer on the Watts account.

Retailer counterclaimed, alleging that the defective and late deliveries constituted a breach of contract, entitling Retailer to offset the balance due by the amount it was required to reimburse Watts.

Both parties agree that, after credits were issued by Wholesaler for nonconforming/defective items, the amount due on Retailer's account is $6,849.98. However, Retailer contends that, since the $4,400 penalty assessed against it by Watts resulted from Wholesaler's late deliveries, it is entitled to offset the $6,849.98 balance by the amount of the penalty.

Court of Appeals held (1) Retailer was liable for the agreed-upon account balance of $6,849.98 and (2) Retailer was not entitled to offset the $100-per-day penalty imposed by Watts, as such damages were not foreseeable to Wholesaler.

## ISSUE
Was Wholesaler liable for the $100-per-day penalty assessed Retailer by Watts?

## DISCUSSION
Subsequent to the Court of Appeals' opinion in this matter, we decided *Stern and Stern Associates v. Timmons*, — S.C. —, 423 S.E. (2d) 124 (Davis Adv. Sheet #22). There, we stated:

> Special damages are by their very nature conditioned by the particular circumstances of each case. 5 Arthur Linton Corbin, *Corbin on Contracts* § 1011 (1964). The party claiming special damages must show that the defendant was clearly warned of the probable existence of unusual circumstances or that because of the defendant's own education, training or information, the defendant had 'rea-

son to foresee the probable existence of such circumstances.' *Id.* While it is true that the defendant need not foresee the exact dollar amount of the injury, the defendant must know or have reason to know the special circumstances so as to be able to judge the degree of probability that damage will result from delayed performance. *Id.* § 1014. The special circumstances must exist when the contract was made. *Id.* § 1010. When the above elements are met, special damages are considered within the contemplation of the parties at the time the contract was signed. *Id.*

Here, it is undisputed that Wholesaler was advised by both Watts and Retailer of the importance of timely delivery. Additionally, as a distributor of specialty doors and windows, Wholesaler was charged with knowledge of the construction industry and the likely impact of delay upon costs of construction. Indeed, Wholesaler's employee, Mr. Kyzer, conceded that late deliveries and nonconforming goods would result in additional costs, in both time and money, to a contractor. Finally, prior to its accrual, Wholesaler was specifically advised of the $100-per-day penalty.

In sum, we find that it was reasonably foreseeable to Wholesaler that Retailer would be assessed the penalty for untimely deliveries. Accordingly, we hold that after credit for the $4,400 penalty is applied, the net amount owed by Retailer to Wholesaler is $2,449.98.

Affirmed in part; reversed in part.

HARWELL, C.J., and FINNEY, TOAL and MOORE, J.J., concur.